**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

May 12, 2026

Re: ***Centene Corporation v. Centurion Equity, Inc.,***
**C.A. No. 2025-0619-MAA**
***Centurion Equity, Inc. v. Centene Corporation,***
**C.A. No. 2025-0802-MAA**

Counsel:

The Court has received Centurion Equity, Inc.'s ("Centurion") Motion for Leave to File Supplemental Briefing (the "Motion") and Centene Corporation's ("Centene") opposition to the Motion. For the following reasons, Centurion's Motion is **DENIED**.

## Background

Before addressing the merits of Centurion's Motion, the Motion must be placed in context. The underlying disputes in this case arise from the sale of Centene's former subsidiary—MHM Services, Inc. ("MHM")—to Centurion.[1] MHM is a correctional healthcare business subject to high volumes of medical malpractice suits.[2] Prior to the sale of MHM, Centene provided MHM medical malpractice insurance through Health Net Life Reinsurance Company ("HealthNet")—a wholly-owned indirect subsidiary of Centene.[3]

HealthNet provided MHM with insurance coverage through reinsurance arrangements.[4] HealthNet agreed to indemnify commercial insurers for liabilities assumed under applicable policies.[5] HealthNet also agreed to indemnify these

---

[1] (2025-0619-MAA) D.I. 1 ["Centene Compl."] ¶ 2; (2025-0802-MAA) D.I. 1 ["Centurion Compl."] ¶ 4.

[2] Centene Compl. ¶¶ 13, 19; Centurion Compl. ¶ 4.

[3] Centene Compl. ¶¶ 14, 19-20; Centurion Compl. ¶ 3.

[4] Centene Compl. ¶ 19.

[5] *Id.* ¶ 20.

insurers for costs (related to covered medical malpractice claims) exceeding the retention amounts set forth in the applicable policies.[6]

HealthNet continues to incur fees and costs, which arise from post-closing claims concerning pre-closing MHM conduct, under this arrangement.[7]  One of the Parties' underlying disputes, and the dispute most relevant to this Motion, is whether Centene, pursuant to the Stock Purchase Agreement ("SPA"), is entitled to indemnification for these fees and costs.[8]

The Parties' disagreement over Centene's entitlement to indemnification led, in part, to both Parties filing actions in the Court of Chancery.  Centene filed an action on June 3, 2025,[9] while Centurion filed a separate action on July 10, 2025.[10] Centurion filed an answer to Centene's complaint on July 14, 2025.[11]  Centene filed an answer to Centurion's complaint on August 4, 2025.[12]  The Court ordered both actions be coordinated together on August 17, 2025.[13]

On August 18, 2025, Centene filed its Motion for Partial Judgment on the Pleadings.[14]  Centurion subsequently filed an answer, which Centene addressed in a reply.[15]  On February 12, 2026, the Court heard oral argument on Centene's Motion for Partial Judgement on the Pleadings.[16]  The hearing lasted nearly ninety minutes and both sides were afforded as much time as they desired to present arguments.[17] Centurion was represented by counsel from Hirsch & Westheimer, P.C. and Cole Schotz, P.C.[18]

On March 20, 2026, the Court received a Stipulation and [Proposed] Order for Substitution of Counsel (the "Substitution of Counsel").[19]  The Substitution of Counsel indicated counsel from Cole Schotz, P.C. was withdrawing appearance on behalf of Centurion.[20]  The Substitution of Counsel also indicated counsel from

---

[6] *Id.*

[7] *Id.* ¶ 46.

[8] Centene Compl. ¶ 46; Centurion Compl. ¶ 6.

[9] Centene Compl.

[10] Centurion Compl.

[11] (2025-0619-MAA) D.I. 7.

[12] (2025-0802-MAA) D.I. 8.

[13] (2025-0619-MAA) D.I. 9; (2025-0802-MAA) D.I. 10.

[14] (2025-0619-MAA) D.I. 10; (2025-0802-MAA) D.I. 11.

[15] (2025-0619-MAA) D.I. 14, 16; (2025-0802-MAA) D.I. 13.

[16] (2025-0619-MAA) D.I. 21; (2025-0802-MAA) D.I. 17.

[17] (2025-0619-MAA) D.I. 26 ["Tr."] 36:12-13; (2025-0802-MAA) D.I. 21.

[18] Tr. 3:24-4:1, 35:21-23.

[19] (2025-0619-MAA) D.I. 24; (2025-0802-MAA) D.I. 19.

[20] (2025-0619-MAA) D.I. 24; (2025-0802-MAA) D.I. 19.

Richards, Layton & Finger, P.A. was entering appearance on behalf of Centurion.[21] On March 24, 2026, Centurion filed this Motion.[22]

## The Parties' Contentions

The Court turns to the merits of the Motion. Centurion contends good cause exists for Centurion to be granted leave to file supplemental briefing,[23] presenting three main arguments to justify its position. Centurion first argues there are "additional arguments not raised in Centurion's previous briefing" which will assist the Court in deciding Centene's Motion for Partial Judgment on the Pleadings.[24] Centurion next argues Delaware has a "strong public policy favoring resolution of cases on their merits."[25] Centurion finally argues Centene will suffer no prejudice if Centurion is granted leave to file supplemental briefing.[26]

Centene opposes the Court granting Centurion leave to file supplemental briefing on its Motion for Partial Judgment on the Pleadings.[27] Centene presents two main arguments to justify its position. Centene first argues Centurion seeks to address arguments in supplemental briefing which have been previously raised by Centurion.[28] Centurion then argues the Court cannot consider any new arguments advanced by Centurion because they have been waived.[29] Centene also disagrees Centene would not suffer prejudice if the Court grants Centurion leave to file supplemental briefing.[30]

## Analysis

### A. Centurion seeks to provide supplemental briefing on arguments previously raised by Centurion.

The Court first addresses Centurion's position that additional arguments, which have not been previously raised, exist and will assist the Court in ruling on

---

[21] (2025-0619-MAA) D.I. 24; (2025-0802-MAA) D.I. 19. Centurion later confirmed counsel from Hirsch & Westheimer, P.C. was also withdrawing its appearance on behalf of Centurion. (2025-0619-MAA) D.I. 36; (2025-0802-MAA) D.I. 23.

[22] (2025-0619-MAA) D.I. 27 ["Mot. OB"]; (2025-0802-MAA) D.I. 22.

[23] Mot. OB ¶¶ 4-13.

[24] *Id.* ¶¶ 5-12.

[25] *Id.* ¶ 4.

[26] *Id.* ¶ 13.

[27] (2025-0619-MAA) D.I. 31 ["Mot. Ans. Br."].

[28] *Id.* ¶¶ 14-19.

[29] *Id.* ¶¶ 20-22.

[30] *Id.* ¶¶ 23-24.

Centene's Motion for Partial Judgment on the Pleadings. Centurion contends these arguments fall into three categories.

The first category of arguments concerns Centene's interpretation of SPA Section 8.2 ignoring "commercial and accounting realities" of captive reinsurance arrangements.[31] Centurion argues the failure to consider commercial context, which has not yet been addressed by either Party, leads to an interpretation that does not read the SPA as a whole, is commercially unreasonable, and produces absurd results.[32]

The second category of arguments concerns SPA Section 8.5 requiring indemnifiable losses be offset by MHM's pre-paid premiums.[33] Centurion argues if Centene's losses (resulting from post-closing claims arising from pre-closing MHM conduct) are found to be indemnifiable under the SPA, the losses must be offset by $17 million in pre-paid premiums MHM paid to HealthNet.[34]

The third category of arguments concerns Centene's reliance on Section 5.6 (to show the Parties intended to terminate HealthNet's reinsurance obligations) again ignoring commercial context.[35] Centurion argues Section 5.6 simply provides MHM could no longer file *new* claims under policies maintained by Centene or its Affiliates—which would not include policies maintained by MHM itself.[36] Centurion asserts Section 5.6 does not address claims that were filed pre-closing, nor does the provision express the Parties' intent for HealthNet to avoid its already-accrued contractual reinsurance liabilities.[37]

Centurion contends these three categories of arguments were not previously addressed in briefing or in oral argument.[38] The Court finds otherwise. In extensive briefing and ninety minutes of oral argument,[39] Centurion presented how captive insurance arrangements function and the accounting impacts of pre-paid insurance.[40] Centurion discussed SPA Section 8.5 and how indemnification claims are to be

---

[31] Mot. OB ¶¶ 6-10.

[32] *Id.*

[33] *Id.* ¶ 11.

[34] *Id.*

[35] *Id.* ¶ 12.

[36] *Id.*

[37] Id.

[38] *Id.* ¶ 12.

[39] (2025-0619-MAA) D.I. 14, 21; (2025-0802-MAA) D.I. 13, 17.

[40] *See* (2025-0619-MAA) D.I. 14 at 1-4, 13-17, 20-22; Tr. 36:21-44:16. Centurion has even provided the Court with financial statements that show the accounting impacts of pre-paid insurance under the reinsurance arrangement at issue. (2025-0619-MAA) D.I. 14 at 13.

offset under the provision.[41]   Centurion addressed, at length, the proper interpretations of SPA Section 5.6.[42]

Centurion does not wish to present new arguments in supplemental briefing. Centurion rather seeks to clarify its positions or relitigate issues already adequately addressed by the Parties. Such reasons simply do not justify the Court granting leave for supplemental briefing.

## B. Delaware's "strong public policy favoring resolution of cases on their merits" is not intended to function as a reset button or safety net.

The Court proceeds by addressing Centurion's policy argument, which underlies the entire Motion. Centurion argues the Court has "significant control over and discretion in" managing its docket,[43] which includes permitting additional briefings in the interests of justice and fairness.[44] Centurion argues permitting supplemental briefing in this case would allow the Court to consider "as robust a record as is possible,"[45] which aligns with Delaware's "strong public policy favoring resolution of cases on their merits."[46]

Delaware's preference for resolving cases on their merits is strong.[47] This public policy is not intended, however, to be used as a reset button or safety net. That is exactly how Centurion attempts to use it here. Centurion attempts to advance revised versions of arguments previously addressed in briefing and oral argument. Because these arguments were already made, the Court can only view Centurion's request for supplemental briefing as seeking a do-over now that it has secured new counsel. Requests for a do-over also fail to justify the Court granting leave for supplemental briefing.

## C. Centene would be prejudiced if the Court permits Centurion to file supplemental briefing.

Centurion argues Centene would not be prejudiced by supplemental briefing because this is a strictly money-damages case.[48] The Court again finds otherwise.

---

[41] *See* (2025-0619-MAA) D.I. 14 at 16-18.

[42] *See* (2025-0619-MAA) D.I. 14 at 11-16; Tr. 45:5-49:7.

[43] Mot. OB ¶ 4 (quoting *Washington v. State*, 844 A.2d 293, 295 (Del. 2004)).

[44] *Id.*

[45] *Id.* (quoting *Roseton OL, LLC v. Dynegy Hldgs. Inc.*, 2011 WL 3275965, at *7 (Del. Ch. July 29, 2011)).

[46] *Id.* (quoting *Waterhouse v. Hollingsworth*, 2013 WL 5803136, at *3 (Del. Super Oct. 10, 2013)).

[47] *Waterhouse*, 2013 WL 5803136, at *3.

[48] Mot. OB ¶ 13.

Centurion has filed its own complaint,[49] an answer to Centene's complaint,[50] and an answer to Centene's Motion for Partial Judgment on the Pleadings.[51] Centurion has also had the opportunity to present its arguments in oral argument.[52] In other words, Centurion has had a more than fair opportunity to advance the arguments it now seeks to advance in supplemental briefing.

The Court will therefore not require Centene to incur further costs and expenses to address arguments already advanced. To find otherwise, and to elongate proceedings further, would be prejudicial to Centene.

## Conclusion

The Court finds Centurion seeks to file supplemental briefing on arguments already advanced and addressed by both Parties. Centurion cannot rely on public policy to receive a do-over, especially when Centene would be prejudiced. Centurion's Motion is therefore **DENIED**.

Sincerely,

*/s/ Meghan A. Adams*

_____

Meghan A. Adams, Judge[53]

cc: All Counsel via File and Serve

---

[49] Centurion Compl.

[50] (2025-0619-MAA) D.I. 7.

[51] (2025-0619-MAA) D.I. 14; (2025-0802-MAA) D.I. 13.

[52] (2025-0619-MAA) D.I. 21; (2025-0802-MAA) D.I. 17.

[53] Sitting as a Vice Chancellor of the Court of Chancery of the State of Delaware by designation of the Chief Justice of the Supreme Court of Delaware pursuant to In re Designation of Actions Filed Pursuant to In re: DESIGNATION OF THE HONORABLE MEGHAN A. ADAMS under Del. Const. art. IV § 13(2) dated May 30, 2025.